# UNITED STATES DISTRICT COURT

for the

District of Columbia

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |
| INFORMATION ASSOCIATED WITH ONE CELL PHONE ACCOUNT STORED AT PREMISES CONTROLLED BY ONE PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 2113 | Case No.  23-SC-1603 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

Located within the jurisdiction of the District of Columbia, there is now concealed  *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|

(i) armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d); (ii) Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g), and (iii) Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c).

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

- ❏ Continued on the attached sheet.
- ❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Riley Palmertree, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone _____ *(specify reliable electronic means).*

Date:  ____7/14/2023____

_____
*Judge's signature*

City and state:  ____Washington, D.C.____

Zia M. Faruqui
(United States Magistrate Judge)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means            ☑ Original            ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH ONE CELL PHONE<br>ACCOUNT STORED AT PREMISES CONTROLLED BY<br>ONE PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR<br>INVESTIGATION OF VIOLATION OF 18 U.S.C. 2113 | )<br>)<br>)  Case No.  23-SC-1603<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search and seizure
of the following person or property located within the jurisdiction of the District of Columbia.
*(identify the person or describe the property to be searched and give its location)*:

  See Attachment  A (incorporated by reference).

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

  See Attachment  B (incorporated by reference).

        **YOU ARE COMMANDED** to execute this warrant on or before _____ July 27, 2023 _____ *(not to exceed 14 days)*
  ☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ Zia M. Faruqui _____ .
                                                                                                           *(United States Magistrate Judge)*

        ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
        ☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____ 7/14/2023 _____            _____
                                                                                                *Judge's signature*

City and state:          _____ Washington, D.C. _____      _____ Zia M. Faruqui _____
                                                                                   United States Magistrate Judge

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br>23-SC-1603 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**
**Property to Be Searched**

This warrant applies to records and information associated with the Verizon account identified by (240) 475-1677 (the "Account") and which is stored at premises owned, maintained, controlled, or operated by Cellco Partnership d/b/a Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, New Jersey.

**ATTACHMENT B**
**Particular Things to Be Seized and**
**Procedures to Facilitate Execution of the Warrant**

I.     **Information to be Disclosed by Cellco Partnership d/b/a Verizon Wireless ("PROVIDER") to Facilitate Execution of the Warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to the Provider or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a.   The following information about the customers or subscribers of the Account:

      i.   Names (including subscriber names, user names, and screen names);

      ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v.   Length of service (including start date) and types of service used;

      vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. For the time period from April 15, 2023 through June 15, 2023: All records and other information relating to wire and electronic communications sent or received by the Account, including:

    i. Records of the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers ("call detail records"), email addresses, and IP addresses) including web browsing history and text messaging history;

    ii. Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received; and,

    iii. Records and information regarding per-call measurement data (PCMD) (also known as Network Event Location Services (NELOS), Timing Delay/Timing Advance (TA), TrueCall, Time on Tower Report, and/or Real Time Tool (RTT) data).

c. For the time period from April 15, 2023 through June 15, 2023: The contents of all communications and related transactional records for all PROVIDER services used by an Account subscriber/user (such as voice call services, voice mail, text messaging, SMS, instant messaging or chat services, or picture and imaging sharing services), including but not limited to incoming, outgoing, and draft calls, chats, messages, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication; the date, size, and length of each

2

communication; and any user or device identifiers linked to each communication (including cookies);

d.  For the time period from April 15, 2023 through June 15, 2023: The contents of all other data and related transactional records for all PROVIDER services used by an Account user (such as voice call services, instant messaging or chat services, or remote computing services), including any information generated, modified, or stored by user(s) or PROVIDER in connection with the Account (such as voicemail, text and SMS messages, contacts, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

e.  All records pertaining to devices associated with the Account, including the names and phone numbers associated with other devices on the subscriber's plan, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s).

Within 14 days of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:

Riley Palmertree
Special Agent
FBI – WFO
601 4th Street NW
Washington, DC 20535
rmpalmertree@fbi.gov

This warrant authorizes a review of records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**II.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, instrumentalities, fruits, and contraband of the violations of 18 U.S.C. § 2113(a) and (d), 18 U.S.C. § 924(c), and 18 U.S.C. § 922(g) as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of any planning and preparation that the user of the account undertook prior to committing the criminal activity under investigation;

(b) Information that constitutes evidence of any steps that the user of the account took to disguise or hide their participation in the criminal activity under investigation;

(c) Information that constitutes evidence of the identification or location of the user(s) of the Account;

(d) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(e) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(f) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner; and

(g) The identity of any person(s) who communicated with the account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review

**III.** **Government Procedures for Warrant Execution**

The United States government will conduct a search of the information produced by PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE CELL PHONE ACCOUNT STORED AT PREMISES CONTROLLED BY ONE PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 2113** | **No 23-sc-1603**<br><br>**Filed Under Seal** |

*Reference:      USAO Ref. # 2023R01241; Subject Account(s): 240-475-1677*

## AFFIDAVIT IN SUPPORT OF
## <u>AN APPLICATION FOR A SEARCH WARRANT</u>

I, Riley Palmertree, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application for a search warrant for certain location and related information associated with one cellular telephone account assigned the phone number 240-475-1677 ("the SUBJECT PHONE NUMBER"), that is stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless ("PROVIDER"), a cellular service provider headquartered in Bedminster, New Jersey.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      Your Affiant, a Special Agent with the FBI since 2017, is currently assigned to squad CR-2 at the Washington Field Office (WFO). Squad CR-2 is responsible for conducting

violent crime investigations in the Washington, D.C. area.  As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Louis Henry Martin has committed violations of 18 U.S.C. § 2113(a) and (d), 18 U.S.C. § 924(c), and 18 U.S.C. § 922(g). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE

6.      On June 14, 2023, at approximately 11:50 a.m., a male suspect (later identified as

Louis Henry MARTIN, DOB 06/11/1963) entered and robbed at gunpoint the TD Bank branch located at 1924 8th Street NW in Washington, D.C.

7.      The suspect entered the lobby, produced a generic black plastic bag, and a semi-automatic handgun.  He pointed the handgun at a bank teller and ordered the other employees to the back of the bank, as depicted in the video surveillance still below.



8.      The employees were forced to move near a series of booth-style tables before the suspect ordered the bank teller and assistant manager to open the drawers.

9.      The suspect continued demanding to know where the money was located. He proceeded to remove cash from the drawers totaling between two drawers approximately $1,244.00 in U.S. Currency.  The suspect departed the location as depicted in the surveillance still below before fleeing south on 8th Street NW.



10.     Employees of TD Bank had placed a tracking device in the money taken by the suspect.  MPD officers tracked the device and stopped MARTIN to 7th and H Street NW less than a half-hour after the robbery.

11.     Upon arrest, MARTIN was wearing the same clothing, including gray sweatpants, a gray sweatshirt, and white shoes, seen on the robber on bank surveillance video.  The below still image from a responding officer's body-worn camera shows MARTIN in the same clothing at the time of his arrest.

11



12.     Upon arrest, MARTIN was in possession of the bank tracker and currency described above.  He further possessed a 9mm semi-automatic handgun consistent with the gun seen on the bank surveillance video, with 10 rounds in the magazine—seven of which were hollow point rounds—and none in the chamber.

13.     The 9mm firearm and 9mm ammunition in this case were not manufactured in the District of Columbia, and as a result both the firearm and ammunition traveled in interstate commerce.

14.     After being advised of Miranda rights, MARTIN admitted to conducting the robbery of the TD Bank at 1924 8th Street NW on June 14, 2023.  MARTIN admitted that it was his firearm as well.  MARTIN further claimed to have used fentanyl in the past two days.

15.     MARTIN was arrested less than a half-hour after the June 14th robbery with the TARGET DEVICE in the pocket of his gray sweatpants, as depicted above.

16.     A background check revealed that MARTIN was previously convicted of a crime punishable by imprisonment for a term exceeding one year, including two prior federal armed bank

robberies.   These prior convictions include Unlawful Possession of a Firearm in U.S. District Court for the District of Maryland (Greenbelt) in case number 13-cr-273 (PX) (*60 month sentence*), Armed Bank Robbery and Use of a Firearm in Connection with a Crime of Violence in U.S. District Court for the District of Maryland (Greenbelt) in case number 97-cr-44 (*63 month sentence*) and Armed Bank Robbery in U.S. District Court for the Eastern District of Virginia (Alexandria) in case number 97-cr-389 (*48 month sentence*), and Unlawful Possession of a Firearm (Prior Conviction) in D.C. Superior Court case number 2006 CF2 023336 (*365 day sentence*).

17.     On June 15, 2023, Magistrate Judge Upadhyaya signed a criminal complaint and arrest warrant charging MARTIN in connection with the June 14, 2023 incident with (i) armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d); (ii) Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g), and (iii) Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c).

18.     MARTIN is held without bond in the District of Columbia in 23-mj-130.  He has conceded detention, waived a preliminary hearing, and agreed to exclude time until a status hearing on August 21, 2023.

*Evidence of Unidentified Cohorts*

19.     At the time of MARTIN's arrest, your Affiant was investigating a bank robbery that occurred two weeks earlier on June 1, 2023 at the TD Bank at 1489 P Street NW.

20.     On June 1, 2023, video cameras show two unknown subjects (UNSUB 1 and 2) approaching on foot the TD Bank on the corner of 15th and P Street NW.

21.     Specifically, a residential security camera records UNSUB 1 and UNSUB 2 walking southbound together and engaged in conversation on 15th Street NW in the vicinity of the 1600 block of 15th St NW.

13



22.     UNSUB 1 is in darker clothing, while UNSUB 2 is in lighter clothing.   The Unknown Subjects continue onto the 1500 block of 15th Street NW together.

23.     UNSUB 1 and UNSUB 2 were captured walking further south on the east side of 15th Street NW on the same block as TD Bank, just around the corner from the bank's main entrance on P Street NW.



24.     UNSUB 1 AND UNSUB 2 continue to walk around the corner toward the bank's front entrance.

25.     UNSUB 2 returns to 15th Street NW and walks north.

26.     UNSUB 1 robs the TD Bank with a firearm (as depicted in the bank surveillance still below) before departing north on foot along 15th Street NW.



27.     Following MARTIN's June 14, 2023 arrest, MPD officers relayed to your Affiant that prior to being detained, MARTIN was walking to a Silver Mercedes occupied by Joseph Lee HUGHES (D.O.B. 03/23/1964).

28.     The firearm removed from the plastic bag MARTIN was carrying upon arrest on June 14, 2023 is consistent with the firearm captured in the June 1, 2023 robbery video.



29.     UNSUB 1 was seen on surveillance video from a nearby church minutes before the

June 1st robbery at approximately 11:44 AM with what looks to be a phone raised to his ear.



30.     At the time of MARTIN's arrest on June 14, 2023, his appearance and gray hair was consistent with that of UNSUB from the June 1st TD Bank video and witness descriptions.

31.     At the time of his arrest, MARTIN was also wearing glasses and carrying at the time of his arrest a black plastic grocery bag consistent with the bag seen on the June 1st surveillance videos (above).

32.     MARTIN had a phone on his person upon his arrest on June 14th and was walking towards a Silver Mercedes, VIN WDBJF7OJX1B270944, occupied by Joseph HUGHES (D.O.B. 03/23/1964) in Chinatown, over a mile from the TD Bank he evidently robbed on June 14, 2023. This distance suggests that some telephonic communication was necessary to coordinate the logistics of the robbery, including pickup times and/or getaway routes.

33.     HUGHES was driving the same vehicle during a traffic incident on November 15, 2022.

34.     HUGHES and Franklin SCOTT (D.O.B. 06/24/1962) were involved in an incident involving credit card fraud in Fairfax, Virginia on May 3, 2018.

35.     Notably, SCOTT is a listed contact in MARTIN's phone, which was observed as MARTIN scrolled through the TARGET DEVICE during a custodial interview, when asked if the TARGET DEVICE would help him ascertain what he may have been doing at the time of the TD Bank robbery on June 1, 2023.

36.     During the custodial interview, MARTIN confirmed that the phone number associated with his phone was the Subject Account: 240-475-1677.

37.     In addition, the fact that UNSUB 1, which your Affiant believes to be MARTIN in surveillance post robbery on June 1st appears to be engaged in a call suggests MARTIN is trying to coordinate being picked up post crime, potentially with UNSUB 2, who appears to be a cohort.

38.     On June 15, 2023, PROVIDER was served with a preservation letter under 18 U.S.C. § 2703(f) related to the target account..

39.     The cell phone on MARTIN's person during arrest—a black Samsung cell phone—was the subject of a previous search warrant authorized by this Court on June 21, 2023 in 23-sw-191.

40.     The purpose of the instant search warrant application is to obtain historic cell-site information associated the account.

### BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

41.     PROVIDER is the provider of the cell services for the SUBJECT PHONE NUMBERS.

42.     PROVIDER is a company that provides cellular telephone access to the general public. As part of the provision of such access, PROVIDER gives its users a cell phone number, voice mail, cell service based text messaging, SMS messaging, the ability to share pictures and video, and cell service based access to the internet. As part of its regular business practices, PROVIDER stores information about the use of these services and their contents for varying periods of time depending on the service.

43.     Wireless providers such as PROVIDER can provide cell service to more than one phone as part of a package, so that the SUBJECT PHONE NUMBER may be associated with other phones that are paid for by the same subscriber. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular PROVIDER account and/or who may have conspired with the user of a particular PROVIDER account.

44.     Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the

19

embedded unique identifiers for a cellular device could take several different forms, including Media Access Control address ("MAC" address), an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), Mobile Equipment Identifier ("MEID"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that cell service providers like PROVIDER retain records of the unique identifiers of their subscribers' cell phones and other devices.

45.     Based on my training and experience, I know that subscribers can communicate directly with PROVIDER about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as PROVIDER typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

46.     Wireless providers such as PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.

47.     Wireless providers such as PROVIDER typically collect and retain information in their normal course of business about their subscribers' use of PROVIDER's services, including

records about calls, text messages, SMS messages, pictures and video or other communications sent or received by a particular device, such as the source and destination telephone numbers ("call detail records"), email addresses, and IP addresses, and other transactional records. These records may include the contents of such communications. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE NUMBER's user or users and who they communicated with and when.

48.    Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider typically stores: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

49.    I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers may be a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.

Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

50.    Based on my training and experience, I know that PROVIDER also collects Per-Call Measurement Data ("PCMD"). PCMD estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data. This location information is variously known as "NELOS" (AT&T), "TrueCall" and "Time on Tower Report" (T-Mobile), "Timing Delay/Timing Advance" (T-Mobile & Sprint), and/or "Real Time Tool" (RTT) (Verizon) data. Given the limits of the antenna compared to cell towers, this information is likely to be even less reliable than it is when collected by traditional cell towers. AT&T's NELOS information can provide an approximate location of the cellular device using a combination of timing advance, Wi-Fi, and global positioning information (GPS). At times, this information can supplement cell site data when no call or text information is available.

51.    In summary, based on my training and experience in this context, I believe that the computers of PROVIDER are likely to contain user-generated content such as stored electronic communications, as well as PROVIDER-generated information about its subscribers and their location and use of PROVIDER services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide PROVIDER with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

52.    As explained above, information stored in connection with a PROVIDER account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a PROVIDER account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, text messages, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by PROVIDER can show how and when the account was accessed or used. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the PROVIDER account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).[1]

---

[1] At times, internet services providers such as PROVIDER can and do change the details and functionality of the services they offer. While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of PROVIDER's services in connection with submitting this application for a search warrant. Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

53.     Based on my training and experience, I know that evidence of who controlled, used, and/or created a PROVIDER account may be found within the user-generated content created or stored by the PROVIDER subscriber. This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group. In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation. This is true for at least two reasons. First, people that commit crimes involving electronic accounts typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content may be quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because phones and similar PROVIDER accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

54.     In my knowledge, training, and experience, I know that criminals sometimes use "burner" phones, or cheap disposable prepaid mobile phones when preparing for and committing their crimes. "Burner" phones are mobile phones for which credit is purchased in advance of service use. Burner phones can be bought with cash and with no contract, plus providers that sell these devices often don't track personal data. Burner phones often use a mobile virtual network

operator that has agreements with companies like PROVIDER to access cell service, therefore, burner phone records may be included in the information stored by PROVIDER.

55.     In my knowledge, training, and experience, I have learned that it is often beneficial to review at least 60 days of cell phone records on either side of a criminal event because they will establish a pattern of life and behavior. A smaller collection of records would make it difficult to determine if it is unusual for the phone(s) to appear in the areas where these crime(s) occurred. Not only will this assist in determining if the phone(s) frequents the areas of the crime scene(s), but also whether the phone normally belongs in these areas because that is where the phone subscriber lives and/or works.

## AUTHORIZATION REQUEST

56.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

57.     I further request that the Court direct PROVIDER to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## CONCLUSION

58.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence of the Subject Offenses may be located with the records and information associated with the SUBJECT PHONE NUMBER described in Attachment A. Therefore, I request that the Court issue the proposed search warrant to seize items described in Attachment B.

25

Respectfully submitted,

_____

Riley Palmertree
Special Agent
Federal Bureau of Investigation


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 14th day of July 2023.

_____

THE HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ (PROVIDER), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of _____. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      The process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here, the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                                    Signature